

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ZA:MPC/DMP

271 Cadman Plaza East
Brooklyn, New York 11201

January 20, 2015

By Hand and ECF

Hon. Lois Bloom
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>    Re:    United States v. Saddiq al-Abbadi
>           Criminal Docket No. 09-MJ-372

Dear Judge Bloom:

      The defendant Saddiq Al-Abbadi, also known as "Sufiyan al Yemeni" and "Sufwan," is scheduled to be arraigned today on the above-captioned complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention for the defendant because there is a presumption of detention due to the nature of the charges, and because the defendant presents a danger to the community and a risk of flight.[1]

I. **Background**

      On April 15, 2009, the defendant was charged by complaint with Conspiring to Murder United States Nationals Abroad, in violation of 18 U.S.C. § 2332(b)(2), and Providing Material Support to al-Qaeda, in violation of 18 U.S.C § 2339B. As a result of these charges, the defendant faces a maximum sentence of life in prison.

   A. Al-Qaeda

      Al-Qaeda is an Islamist terrorist organization formed in 1988 and formally designated a foreign terrorist organization by the United States Department of State on

---

[1] Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

October 8, 1999. Al-Qaeda has helped finance, recruit, transport, and train Islamist extremists to conduct attacks against U.S. military personnel and American citizens both abroad and in the United States. Al-Qaeda publicly declared war against the United States in 1996. Al-Qaeda leaders issued a statement in February 1998 under the banner of "The World Islamic Front for Jihad against the Jews and Crusaders," announcing it was the duty of all Muslims to kill U.S. citizens, both civilian and military, and their allies everywhere.

Al-Qaeda has conducted numerous attacks against U.S. military personnel and outposts abroad. For example, al-Qaeda claimed credit for three bombings that targeted U.S. troops in Aden, Yemen, in December 1992, and claimed to have shot down U.S. helicopters and killed U.S. servicemen in Somalia in 1993. In August of 1998, al-Qaeda conducted twin bombings of the U.S. Embassies in Nairobi and Dar es Salaam, killing more than 200 people and injuring over 5,000. In October 2000, al-Qaeda used an explosive-laden boat to conduct a suicide attack on the USS Cole in the port of Aden, Yemen, killing 17 sailors in the U.S. Navy and injuring 39.

Al-Qaeda has also carried out numerous violent attacks against U.S. and Western civilians and targets. On September 11, 2001, 19 al-Qaeda members hijacked and crashed four U.S. commercial jets – two into the World Trade Center in New York City, one into the Pentagon near Washington, DC; and the last into a field in Shanksville, Pennsylvania – leaving over 3,000 individuals dead or missing. On July 7, 2005, al-Qaeda conducted suicide bombing attacks against the London public transportation system. In 2008, al-Qaeda also claimed responsibility for a suicide car bomb attack on the Danish embassy in Pakistan that killed five, asserting that attack was retaliation for a Danish newspaper publishing cartoons depicting the Prophet Muhammad and for Denmark's involvement in in the NATO Coalition in Afghanistan.

B. Offense Conduct

The defendant is charged with conspiracy to murder United States nationals abroad and providing material support to al-Qaeda.

1. Conspiracy to Murder United States National Abroad

Saddiq al-Abbadi is a longtime member of al-Qaeda who has fought against United States forces in both Iraq and Afghanistan. Al-Abbadi traveled from his home country of Yemen to Iraq in approximately 2003 in order to fight alongside al-Qaeda affiliated battalions against U.S. troops stationed there. Al-Abbadi carried out improvised explosive device attacks against U.S. military personnel and participated in ambushes of U.S. military convoys. In approximately March 2008, al-Abbadi traveled to the Federally Administered Tribal Areas ("FATA") of Pakistan in order to fight for al-Qaeda in Pakistan and Afghanistan. During late spring and summer 2008, Al-Abbadi crossed the border into

2

Afghanistan for the purpose of fighting and killing members of the United States military stationed in that country.

While in Afghanistan, al-Abbadi planned several combat operations against U.S. forces. In May and June of 2008, al-Abbadi led at least two separate attacks against U.S. troops in Paktya Province. In late May 2008, Al-Abbadi led mujahideen fighters in a firefight against U.S. troops. During that battle, two U.S. Army Rangers were wounded by automatic weapons fire from enemy fighters and others were wounded by shrapnel from grenades launched by the attacking mujahideen force. One U.S. Army Ranger was killed. Another, Sergeant First Class Leroy A. Petry, was awarded the Medal of Honor for his actions and heroism in that battle.

Approximately two weeks later, al-Abbadi planned an operation designed to lure U.S. forces to a booby-trapped compound in Ghazni, Afghanistan, that was rigged with explosives set to detonate upon their entry. When U.S. forces arrived at the compound, they found rocket-propelled grenades and artillery rounds littered about. One soldier observed wiring running from the exterior gate to the inside of the compound and recognized the trap. The military evacuated and leveled the compound.

### 2. Material Support of Al-Qaeda

Al-Abbadi has been a member of al-Qaeda for at least a decade. He has longstanding ties to senior members of al-Qaeda's Yemen-based affiliate, known as al-Qaeda in the Arabian Peninsula or AQAP. In addition to the battles he fought on the organization's behalf against U.S. forces in Iraq and Afghanistan, he engaged directly with senior al-Qaeda leadership, including Sheikh Saeed al-Masri, the then-third ranking member of al-Qaeda, in the FATA. In early 2008, al-Abbadi used his connection with the group's leaders to help U.S. citizen Bryant Neil Vinas gain entry into al-Qaeda. Vinas had traveled to Pakistan from Long Island in the hopes of joining al-Qaeda and fighting against U.S. military forces in Afghanistan.

As a result of al-Abbadi's assistance, Vinas was allowed to join al-Qaeda and participate in the organization's three-stage training program in the FATA. The principal goal of this training was to prepare recruits to fight and kill United States and allied forces in Afghanistan. It included instruction on the use of grenades, automatic weapons, and projectile weapons. Upon after completing his training, Vinas received orders from an al-Qaeda senior military commander who was responsible for coordinating all of al-Qaeda's military activity in the Afghanistan/Pakistan region. Ultimately, Vinas developed a plan with senior al-Qaeda external operations leadership to conduct an attack on the Long Island Railroad in New York.

3

## II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act also sets forth certain offenses for which there is a presumption in favor of detention. Specifically, where a defendant is charged with certain enumerated offenses, the Bail Reform Act provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Such presumption is applicable where "the judicial officer finds that there is probably cause to believe that the [defendant] committed" any of the following offenses:

> (B) an offense under section 924(c), 956(a) or 2332b of [Title 18];
>
> (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed.

18 U.S.C. § 3142(e)(3). Section 2332b(g)(5)(B), in turn, lists a number of offenses, including 18 U.S.C. § 2339B, which carries a maximum term of imprisonment of life.

Here, both of the charged offenses carry this presumption of detention. The defendant is charged with conspiring to murder United States nationals abroad, in violation of 18 U.S.C. § 2332(b), which is an offense specified in 18 U.S.C. § 3142(e)(3)(B). The defendant is also charged with providing material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B, which is an offense specified in 18 U.S.C. § 3142(e)(3)(C). Accordingly, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and

4

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). The government addresses these factors below.

### III. The Court Should Enter a Permanent Order of Detention for the Defendant

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond. Moreover, the factors to be considered in the detention analysis show that the defendant presents both a significant danger to the community and a substantial risk of flight if released on bond. Accordingly, the court should enter a permanent order of detention pending trial.

#### A. The Nature and Circumstances of the Offenses Charged

The charged offenses are serious ones. The defendant is charged with conspiring to murder United States nationals abroad and providing material support to terrorists. By their very nature, these crimes involve efforts by the defendant to cause the death of others, whether through attacks on U.S. soldiers stationed abroad or by supporting other efforts by al-Qaeda to kill U.S. citizens. In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence or a Federal crime of terrorism. See 18 U.S.C. § 3142(g)(1). The charged offenses unquestionably fall within these categories, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of these offenses by specifically enumerating them among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit the defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court or adequately protect the community. United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

The government has charged the defendant with working within the al-Qaeda network to conduct attacks against U.S. military personnel in Iraq and Afghanistan. Specifically, al-Abbadi carried out improvised explosive device attacks against U.S. armed forces and participated in ambushes of U.S. military convoys in Iraq. Al-Abbadi also planned and carried out several attacks against U.S. forces in Afghanistan. In one such attack, one U.S. Army Ranger was killed and several others were wounded. Additionally, al-Abbadi's connections within al-Qaeda senior leadership allowed him to help Vinas join al-Qaeda, clearly demonstrating the trust that leaders within the al-Qaeda organization placed in

al-Abbadi. Indeed, al-Abbadi engaged directly with senior al-Qaeda leadership, including Saeed al-Misri, the then-third ranking member of al-Qaeda. As such, the nature and circumstances of these charges warrants detention.

Moreover, the charged offense of conspiring to kill Americans abroad carries a statutory maximum sentence of life imprisonment. The prospect of a lengthy term of incarceration that the defendant will face if convicted confirms that there is a serious risk of flight.

    B.    The Weight of the Evidence

The weight of the evidence against the defendant is substantial.

As set forth in the complaint, a cooperating witness – Bryant Neal Vinas – became a close associate of al-Abbadi's when they lived together for approximately a month in 2008 in a safehouse used by several jihadist groups in the Federally Administered Tribal Areas of Pakistan. Vinas will testify to al-Abbadi's violent activities on behalf of al-Qaeda in both Iraq and Afghanistan.

Vinas's testimony has been corroborated by other witness statements and physical evidence. For example, an individual who trained with al-Qaeda in Afghanistan and participated in several attacks against U.S. forces there has stated that he met al-Abbadi at al-Qaeda safehouses in Iran and in the FATA, and at al-Qaeda's basic firearms training course. Al-Abbadi ultimately advised that individual to join an al-Qaeda affiliated group of fighters, which subsequently launched rocket attacks against American and Coalition forces stationed in Afghanistan.

Accordingly, the evidence against the defendant is strong, and this factor weighs heavily in favor of a finding that the defendant is both a danger to the community and a flight risk.

    C.    The Defendant's History and Characteristics

The defendant's history and characteristics confirm that he is both a danger to the community and presents a substantial risk of flight.

First, the defendant is a danger to the community because he has spent years engaged a sustained effort to kill American soldiers and citizens. As set forth above, he has personally participated in numerous attacks on American soldiers in both Iraq and Afghanistan. Moreover, he actively facilitated the entry of an American citizen into al-Qaeda, which counts among its missions carrying out attacks against U.S. military personnel and American citizens both abroad and in the United States.

In addition, al-Abbadi has previously been convicted in Saudi Arabia of plotting an al-Qaeda attack in Saudi Arabia. He was sentenced to 12 years' imprisonment, of

6

which he served approximately 5 ½ years. This criminal history confirms that the defendant represents a significant danger to the community.

Second, the defendant's history and characteristics also confirm that he presents a substantial risk of flight.

The defendant is a citizen of Yemen. He has no ties to the United States, and no reason to remain in the United States to stand trial in the event that he were released on bond. On the contrary, the defendant has significant international ties. He is from Yemen originally. Were he to flee to Yemen, the United States would have little ability to secure his return. Moreover, the defendant's connections to al-Qaeda and the Taliban have given him the ability to travel freely in areas of Pakistan and Afghanistan from which it would be difficult for the United States to secure his arrest.

Given that he faces life imprisonment if convicted at trial, there is no reason for the defendant to remain in the United States to face such a trial. Indeed, were the defendant to flee the United States, he has access to parts of the world from which the United States has limited ability to recapture or extradite him. Accordingly, the government respectfully submits that the defendant represents a substantial risk of flight if released on bond.

D.   The Danger to the Community Posed by the Defendant's Release

The defendant's release on bond would also present a significant danger to the community. The defendant faces charges for conduct that involved efforts to kill United States nationals abroad and the provision of material support to a terrorist organization with a mission to kill U.S. citizens. Given his efforts over a number of years to murder U.S. citizens and nationals, the defendant presents a clear danger to the community. Were the defendant to be released into the community on U.S. soil, there is no reason to believe he would not return to his former way of life.

7

## IV. Conclusion

For all of the foregoing reasons, the defendant should be detained pending trial. The defendant is charged with extremely serious offenses, both of which carry a presumption of detention, and he faces a potential sentence of life in prison. Therefore, no condition or combination of conditions will assure the defendant's return to court or his compliance with the court's directives, and the Court should enter a permanent order of detention pending trial.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: _____

Zainab Ahmad
Michael P. Canty
Douglas M. Pravda
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel (by hand)

8